1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

LIGIA I. BAYLON,                          )   Case No. CV 07-6063 JC
                                          )
                Plaintiff,                )
                                          )
          v.                              )   MEMORANDUM OPINION AND
                                          )   ORDER OF REMAND
                                          )
MICHAEL J. ASTRUE,                        )
Commissioner of Social                    )
Security,                                 )
                                          )
                Defendant.                )
_____ )

18
19

**I.    SUMMARY**

20
21
22
23

       On September 18, 2007,  plaintiff Ligia I. Baylon ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

24
25
26
27
28

       This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; September 20, 2007 Case Management Order, ¶ 5.
///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

In May 2005, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 55-59). Plaintiff asserted that she became disabled on March 31, 2005, due to lymphedema and side effects from the removal of lymph nodes.[1] (AR 68-69). An Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff and a vocational expert on August 8, 2006. (AR 201-230).

On September 26, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 16-23). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: status post situ ductal carcinoma; invasive, well-differentiated grade I tumor of the right breast; axial lymph node dissection; and removal of 47 lymph nodes (AR 18); (2) plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments (AR 19); (3) plaintiff retained the residual functional capacity to perform a range of light exertion work[2] and, more specifically: (a) could lift and carry 20 pounds occasionally and 10 pounds frequently; (b) could sit, stand, and walk without significant limitations; and (c) could occasionally push and pull with the right upper extremity (AR 19); (4) plaintiff could perform her past relevant work as a chef as it is generally

---

[1]Lymphedema, a condition which may develop when lymph nodes are removed, is an abnormal build up of fluid that causes swelling.

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. Id. To be considered capable of performing a full or wide range of light work, one must have the ability to do substantially all of these activities. Id.

2

performed (AR 22); and (5) plaintiff's allegations regarding her limitations were not totally credible.  (AR 19, 21-22).

The Appeals Council denied plaintiff's application for review on July 27, 2007.  (AR 4-6).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)    Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

///
///

3

(4)     Does the claimant possess the residual functional capacity to
        perform her past relevant work?[3]  If so, the claimant is not
        disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow her to adjust to other work that exists in
        significant numbers in the national economy?  If so, the
        claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

        The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.   Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
(claimant carries initial burden of proving disability).

        **B.     Standard of Review**

        Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

///

---

        [3]Residual functional capacity is "what [one] can still do despite [one's] limitations" and
represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 404.1545(a).

4

1    To determine whether substantial evidence supports a finding, a court must

2    "'consider the record as a whole, weighing both evidence that supports and

3    evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

4    Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

5    953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

6    or reversing the ALJ's conclusion, a court may not substitute its judgment for that

7    of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

8    **IV.   DISCUSSION**

9          **A.     The ALJ's Residual Functional Capacity Assessment Is Not**

10                **Supported by Substantial Evidence.**

11    Plaintiff contends that the ALJ failed properly to consider the medical

12    evidence in determining the extent of plaintiff's functional limitations in her right

13    upper extremity.  (Plaintiff's Motion at 3).  In particular, plaintiff argues that the

14    ALJ failed to give legally sufficient reasons for rejecting the opinion of plaintiff's

15    treating physician, Dr. Sharon Yee.  (Plaintiff's Motion at 3, 5-9).  As the ALJ

16    appears to have accepted Dr. Yee's observation that swelling persists in plaintiff's

17    right upper extremity, but adopted an unsupported limitation resulting therefrom, a

18    remand is appropriate.

19                **1.     Applicable Law**

20    In Social Security cases, courts employ a hierarchy of deference to medical

21    opinions depending on the nature of the services provided.  Courts distinguish

22    among the opinions of three types of physicians:  those who treat the claimant

23    ("treating physicians") and two categories of "nontreating physicians," namely

24    those who examine but do not treat the claimant ("examining physicians") and

25    those who neither examine nor treat the claimant ("nonexamining physicians").

26    Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (1996) (footnote

27    reference omitted).  A treating physician's opinion is entitled to more weight than

28    an examining physician's opinion, and an examining physician's opinion is

5

entitled to more weight than a nonexamining physician's opinion.[4]  <u>See</u> <u>id.</u>  In general, the opinion of a treating physician is entitled to greater weight than that of a nontreating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 600 (9th Cir. 1999) (citing <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir.1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citing <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  <u>Id.</u> (citation and internal quotations omitted); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); <u>Magallanes</u>, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion -- court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the

_____

[4]<u>Cf.</u> <u>Le v. Astrue</u>, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from nontreating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1  [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the

2  treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,

3  602 (9th Cir. 1989).

4         The opinion of a nonexamining medical advisor cannot by itself constitute

5  substantial evidence that justifies the rejection of the opinion of an examining or

6  treating physician.  Morgan, 169 F.3d at 602.  However, an ALJ may reject the

7  opinion of a treating or examining physician based in part on the opinion of a

8  nontreating nonexamining physician, when consistent with other evidence in the

9  record.  Id.

10               2.       Pertinent Facts

11        Plaintiff was diagnosed with, and treated for, right breast cancer in early

12  2001.  (AR 198).  She underwent surgery to remove the carcinoma and 47 lymph

13  nodes.  (AR 181).  Plaintiff also received radiation therapy and was prescribed

14  Tamoxifen.  (AR 169, 171, 178, 181).  There is no evidence of a recurrence of the

15  breast cancer.  (AR 188).

16        On January 31, 2005, plaintiff reported to her oncologist, Dr. Grace Inouye,

17  that she felt discomfort in her right arm.  (AR 127).  Dr. Inouye observed swelling

18  in plaintiff's right hand and "some fullness" in her right forearm.  (AR 124).  She

19  diagnosed plaintiff with "mild" right arm lymphedema and prescribed antibiotics

20  and physical therapy.  (AR 124).  Dr. Inouye advised plaintiff to avoid using her

21  right arm for lifting heavy items.  (AR 124).

22        On February 7, 2005, Dr. Inouye again noted swelling in plaintiff's right

23  hand and diagnosed "[r]ight lymphedema, secondary to surgery for breast cancer."

24  (AR 124).  She instructed plaintiff to avoid "heavy lifting, constricting garment,

25  [and] trauma and injury to that arm."  (AR 124).

26        On March 3, 2005, Dr. Inouye observed that plaintiff's lymphedema had

27  progressed to "moderate."  (AR 122).  She noted that the antibiotics and physical

28  therapy did not relieve the swelling.  (AR 122).  Plaintiff reported to Dr. Inouye

7

1  that her work as a cook/manager exacerbated her condition but that elevating her
2  arm relieved her symptoms.  (AR 122).

3       On April 1, 2005, Dr. Inouye observed improvement in plaintiff's right arm
4  "with decreased use."  (AR 120).  She noted that plaintiff had stopped working as
5  a chef.  (AR 120).

6       On June 28, 2005, Dr. Joseph Hartman, a state agency physician, reviewed
7  plaintiff's medical records through April 2005 and opined that plaintiff could
8  perform a full range of light work.[5]  (AR 153-61).  Dr. Hartman did not impose
9  any push/pull or manipulative limitations.  (AR 159).  He indicated that although
10 plaintiff's allegations were credible, the persistence, intensity and functional
11 limitations were not fully credible, noting, for example, right upper extremity
12 improvement with massage.  (AR 159).

13      On July 21, 2005, plaintiff began treatment with Dr. Sharon Yee, an
14 oncologist.  (AR 190-92).  Dr. Yee noted that plaintiff presented with "significant"
15 lymphedema on her right chest wall and "marked" lymphedema on her right arm.
16 (AR 191).  Dr. Yee did not note any functional limitations.

17      On July 26, 2005, plaintiff sought treatment from Dr. Andrew Lee, who
18 noted that plaintiff was unable to close her right hand in a fist.  (AR 164).  He
19 diagnosed plaintiff with right upper extremity "lymphedema - disabling."  (AR
20 164).

21      On September 6, 2005, Dr. A. Lizarraras, a non-examining state agency
22 physician, reviewed plaintiff's medical records to July 2005.  (AR 167).  He
23 affirmed Dr. Hartman's residual functional capacity assessment as written.  (AR
24 167).  Although Dr. Yee saw plaintiff in July 2005, it does not appear that the

25

26 _____

27     [5]Dr. Hartman checked boxes on a residual functional capacity assessment form, opining
   that plaintiff:  (i) could lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) could
28 sit, stand, and walk about six hours in an eight-hour workday; (iii) was otherwise unlimited in her
   ability to push and pull; and (iv) had no postural or manipulative limitations.  (AR 155-57).

8

1  Commissioner had received, or that Dr. Lizarraras considered Dr. Yee's treatment

2  records in September 2005. (AR 100). It does, however, appear that Dr. Lee's

3  records had been obtained by September 2005, and were reviewed by Dr.

4  Lizarraras. (AR 100, 167).

5         On November 15, 2005, plaintiff again saw Dr. Yee who reported that

6  plaintiff had "some shininess and swelling over the right hand secondary to

7  lymphedema." (AR 189). Dr. Yee also noted that plaintiff was experiencing

8  "persistent" and "severe" pain related to lymphedema in the right upper chest wall

9  and "significant discomfort" and "difficulty" moving her hands. (AR 189). Dr.

10  Yee advised plaintiff to return for treatment in four or five months. (AR 189).

11        In a letter dated January 19, 2006, Dr. Yee reported to Dr. Inouye that

12  plaintiff was "somewhat incapacitated related to her lymphedema which is quite

13  debilitating and has caused her significant morbidity[.]" (AR 188). In a letter

14  dated July 20, 2006, Dr. Yee wrote to the Social Security Administration stating

15  that plaintiff had "significany [sic] morbidity from radiation and lymphedema";

16  plaintiff suffered from "chronic pain" and neuropathy from the lymphedema; and

17  plaintiff was "unable to make a fist or hold anything with her right hand." (AR

18  200). Dr. Yee opined that plaintiff was "totally disabled and [could not] work as a

19  chef." (AR 200).

20              **3.    ALJ's Residual Functional Capacity Assessment**

21        As noted above, the ALJ determined that plaintiff could perform a range of

22  light exertion work, and more specifically: (i) could lift and carry 20 pounds

23  occasionally and 10 pounds frequently; (ii) could sit, stand, and walk without

24  significant limitations; and (iii) could occasionally push and pull with the right

25  upper extremity. (AR 19).

26        In assessing plaintiff with the foregoing residual functional capacity, the

27  ALJ generally relied upon the opinions of the nonexamining state agency

28  physicians, favoring such opinions over that of plaintiff's recent treating

physicians (Drs. Yee and Lee) and finding them to be the "most consistent with the medical record when viewed as a whole". (AR 19). However, contrary to the state agency physicians' assessment that plaintiff had no "push/pull" limitations, the ALJ determined that plaintiff could only occasionally push and pull with the right upper extremity. (AR 19). The ALJ imposed the latter limitation based on "recent medical evidence of swelling persisting in [plaintiff's] right upper extremity[.]" (AR 19) (citing AR 191).

The ALJ acknowledged that plaintiff's symptoms of lymphedema of her right upper extremity were significant for short periods of time, but noted that her treatment had not been consistent with what one would expect for someone whose symptoms were allegedly persistent, profound and debilitating. (AR 20). He pointed out that: (i) her condition had been evaluated only a handful of times since March 2005; (ii) there was no indication in the treatment record that her doctors saw a need to treat it aggressively; and (iii) during plaintiff's last medical evaluation, her doctor advised her to come back in four or five months. (AR 20).

The ALJ expressly rejected the opinion of Dr. Yee contained in such doctor's July 20, 2006 letter, stating:

In making the above residual functional capacity determination, the undersigned considered the July 20, 2006 letter from Sharon Yee, M.D., [plaintiff's] current oncologist (Exhibit 8F) [AR 299]. She reports that [plaintiff] experiences chronic pain, lymphedema of the right arm and right chest wall, with associated neuropathy and that she is unable to make a fist or hold anything with her right hand. Further, she claims that [plaintiff] is "totally disabled" and "cannot work as a chef." While the opinions of treating sources are generally entitled to great weight, I cannot afford Dr. Yee's assessments significant weight, in this case, for several reasons. To begin, she has very limited treatment history with [plaintiff]. The record reveals that

10

1   she has examined [plaintiff] exactly twice, in July and then again in
2   November 2005.  Thus, she simply does not have a strong
3   longitudinal understanding of [plaintiff's] medical conditions, which
4   might otherwise warrant great deference.  Further, there is an inherent
5   inconsistency between her report and her actual treatment.  Though
6   she reports that [plaintiff's] symptoms are debilitating, her treatment
7   has been limited and essentially nondescript.  In fact, though she
8   claims that [plaintiff] experiences chronic pain, she has not prescribed
9   so much as an aspirin for this alleged pain.  Further, she has not seen
10  the need to refer [plaintiff] to a medical specialist, who might be more
11  capable of treating allegedly disabling edema.  Finally, her opinions
12  are clearly beyond the scope of her expertise.  Determining whether
13  someone is "totally disabled" and/or unable to work as a chef,
14  requires not only utilization of medical knowledge, but a
15  comprehensive examination of vocational factors.  In this case, there
16  is no evidence that Dr. Yee has any vocational expertise, and thus,
17  while she may be qualified to opine as to [plaintiff's] physical
18  limitations, she is not qualified to opine regarding that impact on
19  [plaintiff's] ability to perform work in the general economy.  In sum,
20  Dr. Yee's assessment lacks basic indicia of reliability.
21  (AR 21).

22      **4.    Analysis**

23      Although the Court finds that the ALJ articulated adequate reasons to reject
24  Dr. Yee's opinion,[6] it nonetheless notes that the ALJ did accept as true, Dr. Yee's

25

26  _____

27      [6]As noted above, the ALJ rejected the majority of Dr. Yee's findings based upon (i) the
    length of her treatment; (ii) the conservative nature of such treatment; and (iii) Dr. Yee's
28  rendering of an opinion beyond the scope of her expertise.  The ALJ's findings concerning the

                                                                    (continued...)

                                        11

observation (consistent with Dr. Lee's observation) that plaintiff continued to experience significant swelling, i.e., "persistent lymphedema", in her right upper extremity.  (AR 20).  While it was within the purview of the ALJ to reject the treating physicians' opinions regarding the disabling nature of the limitations allegedly resulting from such swelling, the ALJ clearly concluded, contrary to the opinions of the state agency physicians, that plaintiff's condition did impact her ability to function.[7]  However, the ALJ's assessment of the degree of plaintiff's functional impairment, i.e., the limitation to occasional pushing/pulling is not supported by evidence in the record.  Rather, the ALJ's assessment appears to be

---

[6](...continued)
lack of consistent and more aggressive treatment (e.g., pain medication) were specific and legitimate reasons for rejecting Dr. Yee's opinion that plaintiff was disabled.  See 20 C.F.R. §§ 404.1527(d)(2)(i)&(ii) (stating that the length of treatment and the nature and extent of treatment affect the weight accorded to medical opinions); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (where a treating physician's conclusions about a claimant's functional limitations "are not supported by his own treatment notes," the ALJ may reject that opinion); cf. Lester, 81 F.3d at 833 (explaining that the treating physician's "continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment").  Moreover, although there may be no medication available for treating lymphedema (AR 114, 216), it was reasonable for the ALJ to infer that the treating physician would have prescribed pain medication had the condition been so severe as to prevent plaintiff from working.  Likewise, the ALJ was not required to accept the opinion of "totally disabled" rendered by Dr. Yee.  See 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability."); see also Magallanes, 881 F.2d at 751 ("The treating physician's opinion is not . . . necessarily conclusive as to . . . the ultimate issue of disability.") (citation omitted).

[7]Although the ALJ suggests that he adopted a more restrictive residual functional capacity assessment than that recommended by the state agency physicians because of recent medical evidence of swelling persisting in plaintiff's right upper extremity (citing a July 21, 2005 letter authored by Dr. Yee), this Court notes that the second state agency physician considered the contemporaneous July 26, 2005 treatment notes of Dr. Lee which likewise referred to edema and disabling lymphedema in plaintiff's right upper extremity, as well as to plaintiff's inability to close her hand in a fist.  (AR 19, 100, 167, 191).  Accordingly, at least the second state agency physicians' residual functional capacity assessment is not supported by substantial evidence to the extent it fails to incorporate a push/pull limitation.

based upon his non-medical lay opinion.  <u>See</u> 20 C.F.R. § 404.1513(a)(1)

(decision regarding claimant's medically determinable impairments should be

based upon determination made by an "acceptable medical source," such as a

licensed physician); <u>see also</u> <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir.

1975) (ALJ may not make his own medical assessment beyond that demonstrated

by the record); <u>see also</u> <u>Gonzalez Perez v. Secretary of Health & Human Services</u>,

812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's

opinion for the findings and opinion of a physician"); <u>Jones v. Apfel</u>, 2000 WL

87288 *4 (C.D. Cal. 2000) (where there is a conflict between medical opinions,

the ALJ may choose between those opinions but may not substitute his own lay

opinion for that of the medical professionals).

   In light of (i) the ALJ's determination, based upon evidence assertedly not

considered by the state agency physicians, that plaintiff's condition did impact her

ability to function; (ii) the absence of evidence supporting the degree of

impairment adopted by the ALJ; and (iii) the ALJ's rejection of plaintiff's treating

physicians' assessments regarding the degree of impairment, the ALJ should

reassess plaintiff's residual functional capacity.  Moreover, given the foregoing, it

would be appropriate for the ALJ to supplement the record with an additional

medical opinion regarding the functional impact of plaintiff's right upper

extremity persistent lymphedema on, among other things, her ability to push/pull.[8]

///

///

---

[8]Given the treating physicians' asserted observations regarding plaintiff's inability to close her right hand and make a fist, and the fact that at least one such opinion was not considered by either state agency physician, it would also be appropriate to supplement the record with a medical opinion as to whether plaintiff has any manipulative limitations.  If the ALJ concludes, based upon evidence in the record, that plaintiff does have manipulative limitations, the record should also be supplemented with evidence regarding the impact of such limitations on plaintiff's ability to work, *inter alia*, as a chef.

1

## V.   CONCLUSION[9]

2

For the foregoing reasons, the decision of the Commissioner of Social

3

Security is reversed in part, and this matter is remanded for further administrative

4

action consistent with this Opinion.[10]

5

LET JUDGMENT BE ENTERED ACCORDINGLY.

6

DATED:  November 29, 2008

7

8

_____/s/_____

9

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

[9]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's

24

determination except insofar as to determine that a reversal and remand for immediate payment
of benefits would not be appropriate.

25

[10]When a court reverses an administrative determination, "the proper course, except in

26

rare circumstances, is to remand to the agency for additional investigation or explanation."
Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and

27

quotations omitted).  Remand is proper where, as here, additional administrative proceedings

28

could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
1989).

14